N.R. SMITH, Circuit Judge,
concurring in part, dissenting in part:
I agree that the government need not return seized funds for failure to give timely notice where it has already commenced a forfeiture proceeding. I also agree that Supplemental Rule G(5)(a)(iii) required Guerrero to “identify the bailor,” because he asserted an interest as a bailee in the proceedings below. This is true even though he did not describe himself as a bailee on his initial claim form.
However, I write separately in dissent, because (1) I am not convinced that the district court abused its discretion in striking Guerrero’s claim for failure to comply with Supplemental Rule G(5); and (2) in any event, I would affirm the district court’s grant of summary judgment for the government.
I. The district court did not abuse its discretion in striking Guerrero’s claim.
“Civil in rem forfeitures are governed by the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.” United States v. $100,318.00 in U.S. Currency, *1017 354 F.3d 1110, 1117 (9th Cir.2004). Supplemental Rule G(5)(a)(iii) (the rule at issue here) provides: “A claim filed by a person asserting an interest as a bailee must identify the bailor, and if filed on the bailor’s behalf must state the authority to do so.” Supplemental Rule G(8)(c) authorizes the government to move to strike any claim that “fail[s] to comply with Rule G(5) or (6)....” Notwithstanding Supplemental Rule G(5)’s mandatory language, the majority correctly determined that the district court has discretion to excuse failure to comply. The Advisory Committee Notes to Supplemental Rule G state that “[a]s with other pleadings, the court should strike a claim or answer only if satisfied that an opportunity should not be afforded to cure the defects under [Federal Rule of Civil Procedure 15].”
A district court abuses its discretion only when it applies the wrong legal standard, or if it bases its conclusion on a factual finding that is “illogical, implausible, or without support in inferences that may be drawn from the facts in the record.” United States v. Hinkson, 585 F.3d 1247, 1263 (9th Cir.2009). Here, the majority misapplies this standard. The majority overlooks ample support for the district court’s decision to strike Guerrero’s claim and instead concludes that the district court should have sua sponte allowed Guerrero to amend his claim under Federal Rule of Civil Procedure 15. Maj. Op. at 1012-13. Given the ample support for the district court’s decision, the majority’s conclusion finds no support in Rule 15. While Rule 15 makes clear that courts should “freely give leave” to amend, the majority allows that phrase to swallow the district court’s discretion.[1]
Nothing in our cases requires the district court to sua sponte order leave to amend after the close of discovery and the parties’ dispositive motions. Indeed, our court and others have upheld a district court’s discretion to deny leave to amend at that stage of litigation. See, e.g., Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir.1999) (“A need to reopen discovery and therefore delay the proceedings supports a district court’s finding of prejudice from a delayed motion to amend the complaint.”); Solomon v. N. Am. Life & Cas. Ins. Co., 151 F.3d 1132, 1139 (9th Cir.1998) (affirming denial of leave to amend where motion was filed on the “eve of the discovery deadline”); Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir.1999) (“Prejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided.”). Similarly, the addition of a new legal theory weighs against leave to amend under Rule 15. See Jackson v. Bank of Haw., 902 F.2d 1385, 1388 (9th Cir.1990) (“‘Putting the defendants through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.’ ” (quoting Priddy v. Edelman, 883 F.2d 438, 447 (6th Cir.1989))). In this case, because Guerrero asserted the bail- or/bailee claim only after the close of dis *1018 covery and the government’s dispositive motion, the district court properly determined that these factors weigh against leave to amend.
The majority also fails to scrutinize Guerrero’s delay in seeking amendment (i.e., his failure to ever request amendment from the district court). A party’s undue delay and failure to explain the reason for the delay weigh against leave to amend under Rule 15. See Swanson v. U.S. Forest Serv., 87 F.3d 339, 345 (9th Cir.1996); Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 799 (9th Cir.1991). Here, the majority correctly points out that our cases do not preclude amendment, even though Guerrero never requested it. Maj. Op. at 1012-13. Yet, the majority fails to cite any case that even suggests that a district court might abuse its discretion if it fails to order leave to amend sua sponte. Given that a number of Rule 15 factors weighed against leave to amend, the district court’s dismissal of Guerrero’s claim did not rise to the level of an abuse of discretion.
The majority’s analysis focuses exclusively on two factors: prejudice and the likelihood of gamesmanship. While these factors may guide our review under Rule 15, the majority fails to look at these factors through the deferential lens that our precedent requires. This deference to the district court requires that we affirm if these factors could plausibly weigh against leave to amend. See Hinkson, 585 F.3d at 1263. The record makes clear that the district court could plausibly find against Guerrero on these factors.
The majority concludes that the government suffered no prejudice from Guerrero’s failure to identify his bailee interest, because the government knew that the funds belonged to Rosalie Guerrero. Maj. Op. at 1012-13. Yet, the majority acknowledges that revealing the identity of the property’s owner is not the only purpose of Supplemental Rule G(5). Rather, the purpose of the “identify the bailor” requirement “is to provide the government and the court notice of the specific basis of the claim and the source of the property.” Maj. Op. at 1011 (emphasis added). Similarly, Guerrero argues that we should hold his claim only to a notice pleading standard under Rule 8 of the Federal Rules of Civil Procedure. I agree with Guerrero and the majority that notice of the basis of a claim is an essential purpose of Supplemental Rule G(5). Accordingly, the issue is not whether the claim failed to give the government notice of Rosalie Guerrero’s identity, but whether it failed to give the government notice of the specific basis of Guerrero’s claim.
Guerrero’s claim alleged a vague “pos-sessory interest” and ownership of the $11,500. The claim failed to allege a bail- or/bailee interest as a specific basis for relief. Thus, Guerrero failed to give the government even Rule 8-level notice of his intent to later assert a bailor interest.[2]
Based on Guerrero’s claim as pleaded, the government moved to strike the claim — pointing to Guerrero’s lack of ownership and lack of possession (because he had given the funds to Wood). The majority points out that the government did not move to strike Guerrero’s claim on the basis of his failure to identify the bailor. However, as the government asserts, it had no notice of this basis for the claim. Guerrero raised the bailor/bailee issue only in response to the government’s motion to *1019 strike. Prior to that time, Guerrero had only argued that he had an ownership/pos-sessory interest in the funds. Therefore, the government was surprised by Guerrero’s sudden assertion of a bailee interest. Were it otherwise, the government would have needed to argue against Guerrero’s assertion of a bailee interest in its prior briefing.
The record supports the conclusion that the timing of Guerrero’s assertion of a bailor/bailee interest prejudiced the government. As discussed above, Guerrero did not assert a bailor/bailee interest until after the close of discovery. Prior to that time, the government’s forfeiture case was geared toward Guerrero’s claim that he owned the funds. While the majority notes that the government asked Guerrero about his “safekeeping” of the funds in his deposition, Maj. Op. at 1010, that question would not have alerted the government that Guerrero would later rely on a bailor/bailee theory. Instead, the government surely expected, after Guerrero’s deposition, that it had won its case. After all, Guerrero had premised his claim on his ownership of the funds and then admitted that he did not own them. The government would not have known that it needed to disprove Guerrero’s unpleaded bailee interest.
On appeal, it remains unclear to what extent Guerrero even asserts a bailee interest in the $11,500. In his Reply Brief, Guerrero argued that the district court erred, because Guerrero’s assertion of an unadorned “possessory interest” was sufficient to comply with Supplemental Rule G. Guerrero claims he did not need to identify Rosalie Guerrero as the bailor because “[tjhere was no bailee-bailor relationship between [Guerrero] and Rosalie.” Thus, both in the district court below and on appeal, Guerrero seems to move fluidly between theories, claiming and disclaiming them as convenient. This is the exact sort of moving target that Rule G(5) aims to avoid. The majority’s holding only serves to compound the government’s prejudice.
With respect to the gamesmanship factor, the majority concludes that there is no indication that the decision to wait to raise the bailee issue was strategic. Maj. Op. at 1012. However, this statement overlooks the fact that Guerrero had to have known the facts underlying his alleged bailor/bail-ee interest long before he raised the issue. Then, he raised the issue after discovery ended and in response to a dispositive government motion. While I stop short of accusing Guerrero or his attorney of outright gamesmanship, these actions at least infer such design. Such inference in the record should force us to affirm the district court.
II. The district court did not err when it granted the government’s motion for summary judgment.
The district court alternatively granted the government summary judgment. The district court is correct that there is no genuine issue of material fact as to whether the $11,500 constitutes drug proceeds. The majority relies on one piece of evidence to support its conclusion to the contrary: an affidavit of Rosalie Guerrero’s personal injury attorney. However, because the attorney has no personal knowledge of what Rosalie Guerrero did with the insurance proceeds she received, the affidavit establishes only that Rosalie Guerrero received a certain amount of money at a certain time. See Fed.R.Civ.P. 56(c)(4); see also Block v. City of L.A., 253 F.3d 410, 419 (9th Cir.2001) (rejecting reliance on an affidavit to defeat summary judgment where the affidavit was “based on inadmissible hearsay,” not personal knowledge).
, It is well settled that a non-moving party must present “more than a ‘mere ... *1020 scintilla of evidence’ to defeat a motion for summary judgment.” Int’l Church of Foursquare Gospel v. City of San Leandro, 673 F.3d 1059, 1068 (9th Cir.2011) (alteration in original) (quoting Anderson v. .Liberty Lobby, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The scintilla of evidence upon which the majority and Guerrero rely — the fact that Rosalie Guerrero received insurance proceeds — does not preclude summary judgment. Without a competent witness to testify at trial that Rosalie Guerrero saved the funds, Guerrero’s attorney would not even be able to argue that the $11,500 traces back to the insurance proceeds.
No witness would be able to testify in support of this argument. As the majority acknowledges, Rosalie Guerrero would be unable to testify at trial, because she previously invoked the Fifth Amendment. See Nationwide Life Ins. Co. v. Richards, 541 F.3d 903, 910 (9th Cir.2008) (“Trial courts generally will not permit a party to invoke the privilege against self-incrimination with respect to deposition questions and then later testify about the same subject matter at trial.”). As noted above, Rosalie Guerrero’s attorney will not be able to testify at trial that the $11,500 was insurance proceeds, due to her lack of personal knowledge. Similarly, Guerrero himself will be unable to testify of the funds’ origin. Guerrero does not claim to have personal knowledge of the source of the funds. To the extent he seeks to testify, based on information Rosalie Guerrero told him, it is hearsay. As the majority notes, the district court did not abuse its discretion in refusing to consider these hearsay statements on summary judgment.
Contrary to’ the majority’s view, the district court’s conclusion did not require it to weigh the evidence before it. Rather, the government is entitled to summary judgment, because Rosalie Guerrero’s attorney’s affidavit, without more, does not raise a genuine issue of material fact and would not allow a jury to reasonably find in Guerrero’s favor. See United States v. $133,120.00 in U.S. Currency, 672 F.3d 629, 638 (9th Cir.2012) (“ ‘The mere existence of a scintilla of evidence in support of the plaintiffs position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.’ ” (quoting Anderson, 477 U.S. at 252, 106 S.Ct. 2505)).

. I reject any implication that the district court demanded "strict compliance” with Supplemental Rule G(5) and, thereby, abused its discretion by failing to consider whether it could properly excuse Guerrero’s non compliance. The district court analyzed the factors relevant under Rule 15, though it did not label them as such. The district court observed that Guerrero never requested leave to amend his claim or offered any explanation for his failure to comply. The district court also noted that Guerrero failed to even raise the bailor/bailee issue until after the close of discovery and after the government’s disposi-tive motions. Thus, although the district court did not use Rule 15 terms like “prejudice” and "delay,” it is clear that it analyzed these factors.

. Guerrero argues that a bailor/bailee relationship is simply a type of "possessory interest." I agree, and the vague assertion of a ‘'possessory interest” might have been enough to alert the government that Guerrero would claim a bailor interest but for the "identify the bailor” requirement. Guerrero's failure to identify Rosalie Guerrero as the bailor entitled the government to rely on Guerrero’s non-assertion of a bailor/bailee interest.